**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Gabriel W. Despres, | ) | CASE NO. 1:15 CV 410 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Bernardo F. Moreno, *et al.*, | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |


### <u>INTRODUCTION</u>

This matter is before the Court upon Defendants' Motion for Partial Summary Judgment, or in the Alternative, to Dismiss for Failure to State a Claim (Doc. 10).  This is a breach of contract action.  For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.  Counts one (fraud), two (negligent misrepresentation), and six (unjust enrichment) are dismissed.  In addition, with respect to count three (declaratory judgment) plaintiff fails to sufficiently allege entitlement to 10% profit on *all* dealerships.  Therefore, that aspect of count three is dismissed.  All other claims remain pending.

1

**<u>FACTS</u>**

Plaintiff, Gabriel W. Despres, brings this action against defendants, Bernardo F. Moreno ("Moreno"), Bernie Moreno Companies,  and seventeen incorporated entities identified as "M1 Motors, Inc." through "M17 Motors, Inc."   This dispute arises as a result of plaintiff's former employment association with defendants.

For purposes of ruling on the instant motion, the facts asserted in the complaint are presumed true.

Plaintiff and Moreno became friends while working together at a car dealership in Massachusetts.  Both left the dealership to pursue other opportunities.  In 2005, Moreno acquired a Mercedes-Benz dealership in Cleveland as a minority franchisee.  Moreno contacted plaintiff and asked him to assist him in the venture.  According to plaintiff, Moreno was intent on building a group of automobile dealerships and ultimately selling them for a large profit.  In order to convince plaintiff to come to Ohio, Moreno offered him an increased salary, a percentage of the profits, the position of Vice-President, as well as the possibility of significant growth.  Ultimately, plaintiff agreed to leave his job in Massachusetts and join Moreno in Ohio.

On April 13, 2005, Moreno and M1 Motors, Inc. entered into a signed compensation plan with plaintiff.  Among other things, the agreement provides plaintiff with an annual incentive in the amount of "10% of Dealership net profit before taxes, but after owner's salary (capped at $300,000 during 2005 and $500,000 in 2006 and beyond)."  Plaintiff moved to Ohio in early May and began working at the dealership.  Plaintiff had significant involvement in the operation of the dealership.

At the end of 2005, the dealership reported a net profit of approximately $500,000.  In

early 2006, plaintiff asked Moreno when he would receive his annual incentive. In response, Moreno proposed that plaintiff reinvest the approximately $50,000 in the business.  In exchange for the $50,000 reinvestment, as well as the reinvestment of all future annual incentive payments, Moreno offered to pay plaintiff a "10% share of the profits from any and all dealerships upon their sale."  Plaintiff orally agreed and thereafter invested his annual incentive for the years 2005-2013.  According to the complaint, Moreno repeatedly referred to the arrangement as "10-15-50," which stood for plaintiff's 10% interest in all dealerships that would be sold in 15 years for $50 million.  Ultimately, Moreno opened a large number of successful car dealerships. Plaintiff does not allege that any of the dealerships have been sold.

In 2008, plaintiff suffered financial difficulties and borrowed money from Moreno.  In exchange for the loan, plaintiff  signed a document with an amended compensation plan. According to plaintiff, he signed this document only after he made sure that nothing in the document altered the parties' previous agreement that plaintiff would be entitled to 10% of the profit on the sale of any dealership.  That same year, plaintiff went through a divorce.  It is undisputed that on the affidavit submitted in connection with the divorce proceedings, plaintiff did not list as an asset any monies due from either annual incentives or profits due in the event of the sale of a dealership.

Over the next few years, the automobile dealerships experienced great success. Ultimately, in 2012, Moreno assigned plaintiff as the general manager of the Airport Acura dealership, which was struggling.  Moreno also changed plaintiff's compensation package, which plaintiff alleges had no impact on the "10% profit from sale" agreement.  Over the course of that year, the parties' relationship began to deteriorate.  It became apparent to plaintiff that

3

Moreno did not want to work with plaintiff.  In June of 2012, plaintiff received another proposed

revised compensation plan.  Plaintiff wanted to meet with Moreno to discuss the plan, but

Moreno refused.  Instead, Moreno sent an email to plaintiff containing two options:

> Accept the new compensation plan with a warm embrace, get your head out of your ass, straighten out your financial affairs once and for all, and we move forward. The boat gets sold by me (not [sic] involvement from you … I don't even want to ever discuss it again) . . . You continue to do well, rebuild your credibility within the organization, and we move forward with the grand plans we had seven years ago.

> Or, we go with option 2:

> You move back to Boston with your family and pursue your world of riches there. I am the reason you are here, the reason you have a house in Avon, and will take accountability for that. Therefore, I will sell the Acura dealership and give you $250,000 from the proceeds of the sale of Acura. I will also release you from the $100,000 promissory note you signed. That should cover your negative equity, your moving expenses, and help to put to bed your other financial issues. Of course, this is predicated on you staying on at peak performance until the sale is completed. We part as friends.

Plaintiff continued to work for Moreno.  Later that year, plaintiff again borrowed money

from Moreno.  In exchange, plaintiff signed congnovit notes in favor of Moreno.  Moreno then

took over plaintiff's personal finances.  Ultimately, in 2013, plaintiff resigned.

Three months prior to filing this lawsuit, plaintiff was involved in a judicial proceeding

in Massachusetts involving a modification of his child support obligations.  It is undisputed that

plaintiff did not list any claim for unpaid wages or equity interest in any dealership on a sworn

statement filed in connection with the Massachusetts court proceeding.[1]

The complaint contains seven claims for relief.  Count one is a claim for fraudulent

---

[1]     This matter was recently reassigned to the undersigned upon the retirement of Judge Wells.  Prior to the reassignment, Judge Wells granted defendants' motion to expand the record to include the documents from the child support proceeding.

4

inducement against Moreno and M1 Motors, Inc.  Count two is a claim for negligent misrepresentation against these same two defendants.  Count three seeks a declaratory judgment against all defendants.  Count four is a claim for promissory estoppel and count five alleges breach of contract.  Counts six and seven are claims for unjust enrichment and violation of Ohio's Prompt Payment Act, respectively.  Counts four through seven are asserted against defendants Moreno and M1 Motors, Inc.

Defendants move for partial summary judgment or, in the alternative, to dismiss the complaint.  Plaintiff opposes the motion.

## **STANDARD OF REIVEW**

A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing

development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a

6

scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

B.  Dismissal

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).  Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*.  Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice

7

if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id*. at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009)).

**ANALYSIS**

A.  Summary judgment

Defendants argue that the doctrine of judicial estoppel prevents plaintiff from pursuing his claims in this case.  According to defendants, plaintiff failed to identify an "effective equity interest" in any Moreno dealership (either through profits earned or sale of a dealership) on sworn statements made in connection with his Ohio divorce proceeding.  Based on these sworn statements, plaintiff and his former wife entered into a separation agreement, which the Ohio court approved.  Defendants further point out that just three months prior to the filing of this lawsuit, plaintiff filed an affidavit in connection with a child support dispute pending in Massachusetts in which plaintiff requested that his child support obligation be terminated. Again, in that proceeding, plaintiff failed to disclose any asset that he now claims is owed by Moreno.  According to defendants, plaintiff's failure to disclose any such asset prevents plaintiff from asserting any ownership interests in this proceeding.

In response, plaintiff provides affidavits from his former wife indicating that plaintiff informed her long ago of the "effective equity interest" in the Moreno companies.  She claims

8

that both she and plaintiff knew of the interest and that it was not disclosed to the Ohio and Massachusetts courts because neither believed it was a "current" asset as it was dependant on a future event, *i.e.*, the sale of the dealerships.  Therefore, plaintiff did not assert a position in a prior proceeding that is inconsistent with the position he now takes.  Regardless, plaintiff points out that the separation agreement provides that any undisclosed asset will be split evenly between  plaintiff and his former wife.  As such, it cannot be said that plaintiff obtained a tactical advantage by failing to disclose the "effective equity interest" to the Ohio court.  Moreover, in both courts the parties entered into settlement agreements.  Thus, neither court relied on plaintiff's statements in rendering a decision.

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.  This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)(internal citations and quotations omitted).

*See also, Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469 (6th Cir. 1988).  The purpose of judicial estoppel is to "to protect the integrity of the judicial process."  *Id*.  To succeed on a judicial estoppel defense, the opposing party must have expressed a later statement that is "clearly inconsistent" with its earlier position.  In addition, acceptance of the second position must create "the perception that either the first or the second court was misled."  And, the party to be estopped must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id*.

Upon review, the Court finds that defendants are not entitled to summary judgment because the Court cannot say that plaintiff took a position that is "clearly inconsistent" with the

9

position he now takes.  According to plaintiff, he did not identify his "effective equity interest" in the Moreno dealerships because they were contingent interests.  In other words, plaintiff did not possess a current interest in the dealerships and funds were not available to plaintiff at the time he filed the affidavits.  Rather, plaintiff is to receive money only in the event Moreno sells a dealership.  Based on the nature of this asset, the Court finds that it was not "clearly inconsistent" for plaintiff to decline to list this interest on the disclosure forms filed in the divorce and child support proceedings, while at a later point seek enforcement of the agreement. This is especially so in connection with the divorce proceedings in which the parties' separation agreement provided for the allocation of any undisclosed asset.  Moreover, it cannot be said that plaintiff attempted to gain a tactical advantage or had a "motive or intention" to conceal the asset.  As plaintiff's former wife avers, she knew of the agreement[2] and, like plaintiff, believed that the "effective equity interest" need not be disclosed on the forms because the sale of any dealership was to happen in the future.

Defendants argue that plaintiff intentionally failed to disclose any interest in the Moreno dealerships.  According to defendants, plaintiff disclosed his commission interest with his current employer on the form filed in connection with the child support proceeding. Specifically, plaintiff indicated under "commissions" that he "will receive 8% of the net profit or loss" from his current employer.  According to defendants, this demonstrates that plaintiff knew how to identify a "contingent" asset.  Although admittedly the argument has some appeal, the Court finds that this disclosure does not translate into an understanding of the need to disclose

---

[2]     She avers that she was informed of the agreement by both plaintiff
        and Moreno.

10

the "effective equity interest" in the dealerships.  The form specifically requested information on "commissions" under the heading "income."  It does not appear that any similar category applies to the "effective equity interest."  Plaintiff does not allege that he owns any stock in any dealership.  The only arguably applicable category is "other" assets.[3]  As set forth above, however, all parties to the proceedings knew of the asset and, due to its unique nature, did not believe disclosure was required.  The Court cannot say that plaintiff's position that the forms did not require disclosure is "clearly inconsistent" with the position plaintiff now takes.  Accordingly, defendants are not entitled to summary judgment on the issue of judicial estoppel.[4]

B.  Failure to state a claim

1.  Fraud

Defendants argue that plaintiff's fraud claim fails to state a claim for which relief may be granted because plaintiff alleges a fraudulent misrepresentation as to a future event.  Because plaintiff cannot premise a fraud claim on conduct that amounts to a breach of contract, the claim fails.  Defendants also claim that plaintiff fails to allege a fraudulent inducement claim because plaintiff expressly alleges that defendant did not renege on his promise until after he became successful.  Because fraudulent inducement requires an allegation that the promise was not true at the time it was made, the claim fails.  Defendants further argue that there is no allegation that

---

[3]    On the divorce affidavit, plaintiff could have listed the asset under "business interest."  Again, however, plaintiff avers that he did not believe he possessed a current interest in any dealership.

[4]    Having concluded that plaintiff's position is not "clearly inconsistent" with his previous position, the Court need not reach whether the previous courts "accepted" his position in connection with the divorce and child support matters.

11

defendant sold a dealership and failed to pay plaintiff.  As such, plaintiff fails to allege that he suffered damages.

In response, plaintiff argues that he has plead breach of contract and fraudulent inducement in the alternative.  Plaintiff does not respond to defendants' damages argument.

Upon review, the Court finds that plaintiff fails to state a fraud claim.  It is well-settled that under Ohio law, "the existence of a contract action... [generally] excludes the opportunity to present the same case as a tort claim." *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (*quoting Wolfe v. Continental Gas Co.*, 647 F.2d 705, 710) (6th Cir. 1981).  A tort action will lie only if a party breaches a duty separate and distinct from the duties that arise under the contract.  *See Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir. 1976).  Upon review, the Court finds that plaintiff fails to allege a separate duty arising outside the terms of the parties' contract.  Plaintiff expressly alleges that the parties entered into a binding contractual amendment pursuant to which defendant agreed to pay plaintiff 10% of the net profit on the sale of any dealership.  This is precisely the statement that forms the basis of plaintiff's fraud claim.  Because it is no tort to breach a contract, plaintiff fails to state a claim for fraud.

Even if the Court accepted plaintiff's argument that the claims are plead in the alternative, the claim nonetheless fails.  As defendant notes, where the fraudulent misrepresentation relates to a future event, plaintiff must allege that the misrepresentation was made with a present intention not to perform.  Here, however, plaintiff alleges that after making the allegedly fraudulent misrepresentation, Moreno continued to "understand" that plaintiff would obtain 10% of the net profits from the sale of a dealership.  *See*, Compl. ¶ 67 ("In 2007,

12

Mr. Despres and Moreno acquired a Saab dealership....They...both understood and acknowledged that ...Mr. Despres would leave those funds in the business in exchange for his entitlement to 10% of the net proceeds of any sale of the dealership."); Compl. ¶ 82 (In 2011, Moreno "understood" that a change in plaintiff's compensation did not affect his entitlement to sale proceeds).[5]  In light of these allegations, the Court finds that plaintiff does not allege sufficient facts suggesting that defendant made the statement with a present intent not to perform.  Thus, plaintiff fails to state a claim for fraudulent inducement.

In addition, the Court agrees with defendants that plaintiff fails to allege that he suffered any damages.  The allegedly false representation pertains to a future event that has yet to occur.  There is no allegation that Moreno sold any car dealerships.  Therefore, plaintiff fails to allege that he suffered damages as a result of the alleged misrepresentation.

### 2.  Negligent misrepresentation

For the same reasons set forth in connection with the fraud claim, the Court finds that plaintiff fails to allege a claim for negligent misrepresentation.  Namely, plaintiff fails to allege a past or existing fact that could form the basis of a negligent misrepresentation claim.  And, because plaintiff does not allege that defendant sold a dealership and failed to remit 10% of the profit, plaintiff fails to allege damages.[6]

---

[5]    Plaintiff points out that he alleges that "Moreno willfully, knowingly and maliciously made this representation despite the fact that he did not intend to honor the agreement."  This general legal conclusion, however, is directly contradicted by the specific factual allegations in the complaint.

[6]    It appears from the briefing that plaintiff now claims that the misrepresentation consisted of a promise to use plaintiff's "otherwise earned compensation to grow the business for years."

13

3.  Statute of Frauds

Defendants argue that counts three, four, five, and seven are barred by the Statute of Frauds.  According to defendants, the allegations show that the parties intended that performance under the amended agreement would extend beyond one year.  In response, plaintiff argues that the oral amendment is not subject to the Statute of Frauds because it is for an indefinite time period and is capable of being performed within one year.  In the alternative, plaintiff argues that he partially performed under the amendment, which removes it from the Statute of Frauds.

Ohio's Statute of Frauds provides as follows:

No action shall be brought...upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith....

O.R.C. § 1335.05

The Ohio Supreme Court interprets this provision narrowly:

For over a century, the 'not to be performed within one year' provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction.  The provision applies only to agreements, which by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year.  Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.

*Sherman v. Haines*, 652 N.E.2d 698, 700 (Ohio 1995).

Defendants argue that the Statute of Frauds applies because the allegations in the

---

This, however, is not the misrepresentation alleged in the complaint.  Rather, plaintiff expressly alleges that the misrepresentation that forms the basis of the claim consists of Moreno's promise to pay plaintiff 10% of the net profits received upon the sale of the business.  (Compl. ¶111).

14

complaint claim that the parties intended that the amendment would be in effect for a number of years.  This Court disagrees.  In *Olympic Holding Co., L.L.C. v. Ace Limited*, 909 N.E.2d 93 (Ohio 2009), the Ohio Supreme Court addressed a Statute of Frauds case involving a proposed joint venture agreement.  The court held that the Statute of Frauds applied because "the parties envisioned that the proposed joint venture agreement would last five years."  In addition, other courts of appeals in Ohio have determined that if the parties intended that the agreement last more than one year, the Statute of Frauds bars oral agreements.  *See, e.g., Lingo v. Ohio Central Railroad, Inc.*, 2006 WL 1230679 (Ohio Ct. App. 2006).

     After *Olympic Holding*, however, the Sixth Circuit addressed whether the parties' intent is relevant to such a determination.  *Manwaring v. Martinez*, 527 Fed. Appx. 390 (6th Cir. May 31, 2013).  The Sixth Circuit recognized that the language in *Olympic Holding* is "problematic."  The court went on to note, however, that the "conflict is only superficial."  The Sixth Circuit engaged in a lengthy analysis of *Sherman* and the Supreme Court case relied on in *Sherman*.  And, although the court recognized that some Ohio courts of appeals cases "have apparently adopted the intent approach," the Sixth Circuit ultimately concluded that the Ohio Supreme Court "would not follow their approach."  Instead, the court held as follows:

> Unlike the district court, we do not read *Olympic Holding* as directing us to depart from the majority approach to the Statute of Frauds.  It seems incredible that in merely four sentences and with no explanation, the Ohio Supreme Court would depart from the standard approach to the Statute of Frauds, an approach it had earlier approved in *Sherman*....  The court's reference to the parties' intent is best interpreted to mean their intent that was expressed as a term of their oral contract.  *Olympic Holding* does not require us to depart from the approach clearly explained in *Sherman*.

*Manwaring v. Martinez*, 527 Fed. Appx. 390, 395 (6th Cir. May 31, 2013).

     This Court is bound to follow the Sixth Circuit's interpretation of *Olympic Holding*.

15

Therefore, the intent of the parties to an oral agreement is not relevant to determining whether the Statute of Frauds applies unless the intent was expressed as a term of the oral agreement.

The Court now turns to whether the amendment at issue in this case falls within the Statute of Frauds.  Based on the allegations in the complaint, the Court finds that it does not. Plaintiff alleges that Moreno promised that if plaintiff "left his annual incentive payments in the business going forward, then he would be entitled to a corresponding 10% share of the profits from any and all dealerships upon their sale."  (Compl. ¶ 58).  The Court finds that this alleged oral contract is capable of being performed within one year.  Had Moreno decided to sell the one existing dealership before the end of 2006, performance under the contract would have been complete.  Defendants argue that Paragraph 58 contemplates the payment of a number of annual incentives, making performance within one year impossible.  The Court disagrees.  The alleged oral agreement does not *require* plaintiff to perform over a number of years.  Rather, the contract is for an indefinite period and is dependent upon a contingency that may or may not happen within a year. *See*, *Sherman v. Haines*, 652 N.E.2d 698, 700 (Ohio 1995)("Where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.") Although it appears that the parties may have intended that the contract exist on a going forward basis, there is no term alleged that requires performance after a one year period.  Again, had Moreno sold the existing dealership during 2006 the parties could have parted ways as the contract was fully performed.

Defendants further argue that plaintiff alleges that Moreno described the amendment as the "10-15-50" plan, whereby plaintiff was to receive 10% of the profits for the sale of any

16

dealership in approximately 15 years when the dealerships were to be sold for $50 million. According to defendants, these allegations show that performance was not to occur within one year.  The Court disagrees.  Plaintiff alleges that this conversation occurred years after the parties entered into the amendment.  (Compl. ¶ 67-68.)  There are no allegations, however, that the parties intended this "plan" to be a term of the oral agreement.  In other words, plaintiff does not allege that the agreement prevented Moreno from selling any dealership until 15 years in the future.  Thus, at best these allegations show that the parties may have intended that the contract continue for a number of years in the future.  Intent, however, unless it is contained in a contractual term, is not relevant to determining whether the Statute of Frauds applies.[7]  *See*, *Manwaring,* 527 Fed. Appx. 390, 395.

Having concluded that the Statute of Frauds does not bar plaintiff's alleged oral contract claim, the Court need not reach whether plaintiff's partial performance removes the contract from the reach of the statute.

### 4.  Declaratory judgment

Defendants argue that the portion of plaintiff's complaint in which he requests a declaratory judgment that the written agreement "entitles [plaintiff] to 10% of the annual net

---

[7]     Defendant also points out that plaintiff alleges that the parties intended to expand the company and purchase additional dealerships.  Again, there is no requirement in the alleged oral contract that Moreno buy additional dealerships.  For example, in Paragraph 37 of the Complaint, plaintiff alleges that Moreno's "plan" was to build a group of dealerships and sell them for a profit.  There is no allegation, however, that this "plan" was an express part of the amendment. Therefore, because this argument rests on the intent of the parties, it is not relevant to a determination as to whether the Statute of Frauds applies.

17

profits for [M1] and every dealership acquired...thereafter" fails to state a claim.  According to defendants, the written agreement and the allegations in the complaint belie this request.  Plaintiff does not respond to this argument.  Having reviewed the written agreement and the allegations, the Court agrees with defendants.  Defendants point out that the written agreement provides for 10% profit of the "Dealership."  At the time, only one dealership existed.  Moreover, plaintiff alleges in the complaint that the agreement entitled plaintiff to "10% of M1's annual net profit."  (Compl. ¶46) Although plaintiff also alleges that somehow the written agreement entitled plaintiff to 10% of profits earned by other defendants, there are no factual allegations supporting this bare legal conclusion.  Rather, plaintiff summarily alleges–in direct contradiction to the written agreement and plaintiff's own allegations–that he is entitled to a declaration that the written agreement somehow binds *all* defendants to remit to plaintiff 10% of the net profits of all dealerships.  The Court finds that plaintiff fails to allege sufficient facts supporting this aspect of his claim for declaratory relief.  Moreover, plaintiff fails to offer any opposition to defendants' argument and, in fact, in his brief expressly argues that the agreement entitles him to 10% of M1's profits.  *See*, Doc. 13 at p. 16 ("[P]laintiff complied with all terms of the April 13, 2005 agreement based upon which he was entitled to receive 10% of M1 Motors' annual profits.")  For these reasons, the Court finds that the portion of plaintiff's complaint seeking a declaratory judgment that plaintiff is entitled to 10% profit from all dealerships fails to state a claim for which relief may be granted.

5.  Unjust enrichment

Defendants argue that plaintiff's unjust enrichment claim must be dismissed because plaintiff fails to allege damages separate and apart form those asserted in support of his breach of

contract claim.  Because it is well-settled that a party may not recover in quasi-contract for damages arising as the result of a contractual breach, plaintiff fails to state a claim for unjust enrichment.  In response, plaintiff argues that the complaint contains allegations on each element of an unjust enrichment claim.  Plaintiff also claims that he is entitled to plead in the alternative and, therefore, his unjust enrichment claim cannot be dismissed at this time.

Where "a party retains money or a benefit that in equity or justice belongs to another," he will be liable for unjust enrichment.  *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 222 (6th Cir. 1992) (citing *Hummel v. Hummel*, 14 N.E.2d 923 (Ohio 1938)).  The elements of a claim for unjust enrichment include (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.  *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (citing *Hummel*).

Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject. *Ullmann v. May*, 72 N.E.2d 63 (Ohio 1947), *paragraph four of the syllabus*. *See also Joseph Oldsmobile/Nissan, Inc. v. Tom Harrigan Oldsmobile, Inc.*, 1995 WL 276804 (Ohio App. 2nd Dist. May 10, 1995) (citing *Williams v. Goodyear Aircraft Corp.*, 85 N.E.2d 601 (Ohio App. 9th Dist. 1948)); *City of Cincinnati v. Cincinnati Reds*, 483 N.E.2d 1181 (Ohio App. 1st Dist. 1984)).  In *Ryan v. Rival Manufacturing Co.*, 1981 WL 10160, *1 (Ohio App. 1st Dist. Dec. 16, 1981), the court stated,

> It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact.  The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule.

Upon review, the Court finds that dismissal is warranted.  Plaintiff's unjust enrichment claim is based on the allegation that defendants were unjustly enriched by failing to make "the contractually-provide payments."  (Compl. ¶ 140).  In the context of his unjust enrichment claim, plaintiff also alleges that the agreement entitled him to 10% of the profit of the business and that he fully performed under the agreement.  (Compl. ¶¶ 137-38).  Thus, it is readily apparent that plaintiff's unjust enrichment claim is based on the same subject matter as his contract claim.  Plaintiff alleges no facts, including damages, that would arise outside the scope of the parties' contract.  Plaintiff argues, however, that he is permitted to plead in the alternative.  While some courts have held that alternative pleading may be permissible if the parties dispute the existence of a contract, no such circumstance is present here.  Defendants admit in their answer that pursuant to "the April 13, 2005 agreement attached as Exhibit A to the Complaint, M1 Motors agreed to pay Mr. Despres an annual salary, a monthly incentive and an annual incentive...." (Compl. ¶ 129).  Defendant further admitted that "Mr. Moreno and Mr. Despres executed a 'Compensation Plan' dated April 13, 2005."  (Compl. ¶ 2).  Although the parties may dispute the terms of the agreement or whether a breach occurred, defendant does not dispute that the contract exists.  Therefore, the Court finds that because a contract governs the relationship between the parties, plaintiff cannot succeed on his unjust enrichment claim and dismissal is warranted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment, or in the Alternative, to Dismiss for Failure to State a Claim (Doc. 10) is GRANTED in PART and DENIED in PART.  Counts one (fraud), two (negligent misrepresentation), and six (unjust

enrichment) are dismissed.  In addition, with respect to count three (declaratory judgment) plaintiff fails to sufficiently allege entitlement to 10% profit on all dealerships.  Therefore, that aspect of count three is dismissed.  All other claims remain pending.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/17/15

21